IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA HAUSEN and RAFAEL BLAZQUEZ,   )<br>)<br>Plaintiffs,   )<br>)<br>vs.   )<br>)<br>PS ILLINOIS TRUST,   )<br>)<br>Defendant.   ) | Case No. 11 C 6888 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Maria Hausen and Rafael Blazquez have sued PS Illinois Trust (PS) for breach of contract, violation of the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/2, conversion, and fraud. The Court has jurisdiction based on diversity of citizenship. PS has moved to dismiss plaintiffs' claims. For the reasons stated below, the Court grants defendant's motion in part and denies it in part.

### Background

The Court accepts the allegations in plaintiffs' complaint as true for purposes of resolving the motions to dismiss. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

Hausen and Blazquez are married citizens of Spain who spend part of each year working as visiting scholars at Northwestern University. They rented an apartment in Evanston, Illinois, but in December 2010 they decided to store the contents of their apartment in a self-storage facility before returning to Spain for an extended period.

Plaintiffs went to a storage facility owned by PS and told an employee that they needed a storage unit because they were returning to Spain. On December 27, 2010, they returned to the storage facility and spoke with another employee, again saying that they were leaving the United States for an extended period and that they needed a storage unit for all of the items in their one and one-half bedroom apartment. They decided to rent one of the facility's storage units for $155.70 per month.

The PS employee that Hausen and Blazquez met gave them a rental agreement, and they filled it out. The employee spent less than five minutes going over the provisions with plaintiffs, and they did not have enough time to read the entire agreement. The employee did not highlight or request that they read any of the lease provisions. Even though they had told the employee that they intended to store the contents of an entire apartment in the storage unit, the employee never pointed out that a provision of the rental agreement stated that plaintiffs could only store $5,000 worth of property in the unit.

Because they were returning to Spain in a few days, plaintiffs tried to list their address and telephone number in Spain as contact information on the rental agreement, but the PS employee insisted that they use a U.S. address and telephone number. Hausen and Blazquez put their temporary U.S. contact information on the rental agreement but told the employee that the only way to contact them would be via e-mail. The employee promised that PS would send all communications via e-mail.

Plaintiffs also signed an addendum providing them with $3,000 of insurance for their property in the storage unit. They expressed concern that the amount of coverage was insufficient, but the PS employee told them that the coverage was standard and

2

the storage facility was safe.

At the same time that plaintiffs signed the rental agreement for the storage unit, they also authorized PS to automatically charge Blazquez's credit card every month to pay for it. On February 2, 2011, PS unsuccessfully attempted to charge Blazquez's card. Plaintiffs allege that any subsequent attempt to charge the credit card would have been successful, but PS did not try again after its first attempt was unsuccessful. PS did not e-mail plaintiffs to tell them of the payment problem as it had promised. Instead, PS sold all of plaintiffs' property to recover the $572 that PS claimed it was owed because of nonpayment in March.

PS Illinois never gave Hausen and Blazquez any notice of the nonpayment or the sale of their property. In late April, plaintiffs noticed that PS had not charged their credit card recently and called to find out why. A PS employee told them of the sale. Plaintiffs requested documents and records related to the nonpayment and sale, but PS has refused to provide any. In addition, PS has not told plaintiffs the amount it received from the sale of their property and has not delivered to them any amount it received in excess of $572.

## Discussion

PS has moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (3), (6). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). A plaintiff

3

"has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable." *Id.*

PS argues that venue is improper because the rental agreement contains a forum selection clause requiring that plaintiffs bring any claims in small-claims court; Blazquez does not have standing to bring a breach of contract claim; Blazquez's fraud claims fail; and neither plaintiff has stated a claim for conversion.

## A. Venue

PS contends that venue is improper because the rental agreement contains a forum selection clause. *See Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (dismissal based on forum selection clause is brought under Fed. R. Civ. P. 12(b)(3) as an objection to venue). Plaintiffs make several arguments, among them that the entire motion to dismiss is untimely and that the forum selection clause is not enforceable.

A party must bring a motion to dismiss under Rule 12(b) before filing a responsive pleading such as an answer. Fed. R. Civ. P. 12(b); *see Perkins v. University of Illinois at Chicago*, No. 95 C 4320, 1995 WL 680758, at *1 (N.D. Ill. Nov. 14, 1995) (Rule 12(b) motion must be brought before, not concurrently, with answer). PS electronically filed its answer on October 27, 2011 at 4:31 p.m. and its motion to dismiss five minutes later, at 4:36 p.m. Plaintiffs argue that the motion to dismiss was untimely and defendant's objection to venue is therefore forfeited. *See* Fed. R. Civ. P. 12(h).

If PS's motion to dismiss had been filed five minutes and one second earlier, it

would have complied with Rule 12. Such *de minimis* noncompliance with the rule does not justify holding that PS forfeited its objection to venue. *See Garner v. Lakeside Cmty. Comm.*, No. 10 C 174, 2010 WL 3034769, at *2 (N.D. Ill. Aug. 3, 2010) (refusing to deem allegations of complaint admitted as sanction for filing contemporaneous answer and motion to dismiss); *Kimbrell v. Brown*, No. 09-cv-511-JPG, 2009 WL 5064384, at *2 (S.D. Ill. Dec. 17, 2009) ("when filed contemporaneously, courts often consider the motion to dismiss to predate the answer").

PS points out that the rental agreement contains a forum selection clause. The contract provides that the occupant of a storage unit may not store more than $5,000 of property in the unit and that the liability of PS is limited to $5,000 "for any Loss from any cause whatsoever." Pl. Ex. 1 ¶¶ 6, 8. The rental agreement also states that, because the value of any claim is limited to $5,000, "any action for adjudication of a claim shall be heard in a court of limited jurisdiction such as a small claims court." *Id.* ¶ 5.

The Court agrees with plaintiffs that, taking their allegations as true, they have sufficiently alleged that the forum selection clause is unenforceable under Illinois law based on procedural unconscionability. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011) (in considering a motion to dismiss for improper venue, court is required to accept plaintiff's version of events as true). Under Illinois law, "[p]rocedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of meaningful choice." *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60, 949 N.E.2d 639, 647 (2011) (internal quotation marks omitted). "Factors to be considered in determining whether an agreement is

5

procedurally unconscionable include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Id.* (internal quotation marks omitted).

In *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 918 N.E.2d 265 (2009), the Illinois Appellate Court held that a virtually identical liability limitation used by PS and its affiliates was unenforceable. *Id.* at 350–53, 918 N.E.2d at 274–77. One of the bases for the court's decision was that the rental agreement was procedurally unconscionable because the evidence at trial showed that plaintiff had been given only five minutes to review the contract and had not read it completely, even though she had initialed each provision of the contract. *Id.* at 353, 918 N.E.2d at 277. The court also noted that the storage facility employee who assisted the plaintiff never pointed out the $5,000 limitation on property stored in the unit even though she knew that the plaintiff intended to store large appliances, including a washer, a dryer, and a refrigerator, in the unit along with may other items. *Id.* Due to these circumstances, the plaintiff did not have a meaningful choice to agree to the damage limitation. *Id.* at 352–53; 918 N.E.2d at 276–77.

Hausen and Blazquez have made very similar allegations about the circumstances under which they signed the rental agreement. If anything, the circumstances plaintiffs allege are more supportive of a claim of unconscionability than the fact in *Dubey*. Specifically, they allege that the PS employee falsely assured them that $3,000 of insurance would be sufficient, and at the time, they had only five days to

arrange to store their property before returning to Spain. Compl. ¶¶ 18, 23. Plaintiffs allege that they had only a few minutes to review the contract. Plaintiffs also allege that the PS employee did not point out the $5,000 damage limitation even though they had told the employee that they intended to store the contents of an entire apartment in the storage unit and expressed concern about the low amount of insurance coverage they received. Considering all the circumstances, plaintiffs sufficiently allege that they did not have "a reasonable opportunity to understand the terms of the contract." *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 23–24, 857 N.E.2d 250, 264–65 (2006) (internal quotation marks omitted) (rejecting procedural unconscionability argument when class of plaintiffs had initialed a statement that they had read terms and conditions in contract and when there was no dispute that plaintiff could have read terms and conditions).

In its answer, PS denies plaintiffs' allegations setting out the unconscionability claim, but it does not present evidence to counter the allegations. *See Faulkenberg*, 637 F.3d at 809–10 ("When ruling on a motion to dismiss for improper venue, the district court is not obligated to limit its consideration to the pleadings or to convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." (brackets and internal quotation marks omitted); *Cont'l Cas. Co. V. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Local 73, SEIU v. Argonne Nat'l Lab.*, No. 05 C 2772, 2006 WL 695532, at *3 (N.D. Ill. Mar. 13, 2006) (district court deciding a 12(b)(3) motion can hold an evidentiary hearing and make findings of fact).

Instead, PS argues that the court in *Dubey* premised its ruling that the damage limitation violated Illinois public policy on a statute that has since been amended. It is

7

true that the court in that case determined that PS's damage limitation violated a provision of Illinois's Landlord and Tenant Act, 765 ILCS 705/1, which was amended after the events at issue in that case so as not to apply to nonresidential leases. *Dubey*, 395 Ill.App.3d at 351, 918 N.E.2d at 275. The court's procedural unconscionability holding, however, was a separate, alternative holding to its determination that the damage limitation violated the Landlord and Tenant Act. *Id.* at 352, 918 N.E.2d at 276; see *Phoenix Ins.*, 242 Ill. 2d at 60, 949 N.E.2d at 647 ("Although related, a finding that a contract provision is invalid because it is unconscionable is distinct from a finding that a contract provision is invalid because it violates public policy."). For this reason, the subsequent amendment to the Landlord and Tenant Act does not affect the court's discussion of unconscionability.

PS cites several cases in which courts enforced its liability limitation, but only one of them addresses procedural unconscionability, and it is not an Illinois-law decision. In *Reule v. H.O. Seiffert Co.*, No. C08-1591 MJP, 2009 WL 2057047 (W.D. Wash. July 13, 2009), the court determined that a $5,000 damage limitation was not unconscionable under Washington law. *Id.* at *3–4. The rental agreement, however, was a single page, whereas PS's rental agreement is four pages long. *Id.* at *4. Additionally, the damage limitation in *Reule* had "a cartoon character in the margin calling further attention to it" and "invited the customer to negotiate with Defendants to circumvent the $5,000 limitation with written permission." *Id.* PS's rental agreement contained nothing flagging the damage limitation and did not suggest a means to obtain a higher limit.

8

Defendant also cites *Johnson v. PS Illinois Trust*, 03 C 6517 (N.D. Ill. Nov. 14, 2005), in which the court held that PS's $5,000 damage limitation was enforceable. *Id.*, slip op. at 8–9. The plaintiff argued that PS had so much more bargaining power that the damage limitation violated Illinois public policy. *Id.* at 7. The court rejected this argument, but did not address procedural unconscionability or the conditions under which the plaintiff signed her rental agreement. *Id.* at 7–8. The court specifically noted that there was no evidence PSI acted "in an underhanded fashion." *Id.* at 6. In the current case, plaintiffs contend that they were not given enough time to read and understand the rental agreement and allege that PS acted in an underhanded, and indeed fraudulent, fashion.

Neither party addresses a recently added section of Illinois's Self-Service Storage Facility Act that provides that any limitation of value that is printed in bold type or underlined is enforceable. 770 ILCS 95/7.5. PS's $5,000 storage limit was printed in bold. Pl. Ex. 1 ¶ 6. But the new section became effective August 26, 2011, after the expiration of the rental agreement in early 2011, and thus it does not apply to the rental agreement at issue here. *Id.* ¶ 2 (rental agreement continues month-to-month until terminated); *see Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217, 676 N.E.2d 1295, 1303 (1997) ("statutes and laws in existence at the time a contract is executed are considered part of the contract").

Plaintiffs have adequately alleged that the rental agreement's forum selection clause is unenforceable because the damage limitation it is based upon is procedurally unconscionable. The Court denies PS's motion to dismiss the complaint for improper

venue.

B.  **Breach of contract claim**

PS argues that Blazquez has no standing to assert a breach of contract claim because he did not sign the rental agreement. After receiving the signed copy of the rental agreement attached to PS's answer, plaintiffs conceded that Blazquez did not sign the rental agreement and withdrew his breach of contract claim. The Court dismisses Blazquez's breach of contract claim.

C.  **Fraud claims**

PS contends that Blazquez does not have standing to assert either his common law and ICFA fraud claims. Its arguments, however, focus on Blazquez's supposed failure to allege sufficient facts to support the fraud claims. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1029 (N.D. Ill. 2007) (applying heightened pleading standard to common law fraud and fraud-based ICFA claims). "A complaint alleging fraud must provide the . . . who, what, when, where, and how." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted).

Under Illinois law, "[t]he elements of common law fraud are (1) false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act: (4) plaintiff's reliance on the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Miller*

*v. William Chevrolet/Geo*, 326 Ill. App. 3d 642, 648, 762 N.E.2d 1, 762 (2001).

> To prove a private cause of action under [the Illinois Consumer Fraud] Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.

*Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 180, 835 N.E.2d 801, 850 (2005).

PS argues that there is nothing in the complaint to indicate that it made false statements intending to induce Blazquez, who did not sign the contract, to store his property in the storage unit. Plaintiffs, however, sufficiently allege that PS intended to cause Blazquez to use the storage unit and to provide his credit card for PS to charge the monthly fees. Hausen and Blazquez, who are married, visited the storage facility together twice, and they allege that Hausen never visited without Blazquez. Compl. ¶¶ 14, 17. They allege that they informed two different PS employees that they intended to store all of their belongings in a unit, not distinguishing between the property of each of them. *Id.* ¶¶ 15, 18. Although only Hausen actually signed the rental agreement, the complaint adequately alleges that PS knew Blazquez intended to store his property in the unit, or at least that it knew the property to be stored belonged to both of them.

In sum, plaintiffs adequately allege that the purpose of PS's false statements was to have Blazquez pay for the rental of a storage unit. The false statements that plaintiffs allege PS made to get Hausen to rent a storage unit, including promising to contact the plaintiffs by e-mail and telling them that $3,000 of insurance would be sufficient, are alleged to have been made equally to Blazquez. Blazquez has

11

sufficiently alleged the facts comprising his fraud claim, providing PS with the date, place, and circumstances surrounding its alleged fraudulent acts. *See Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 732 (N.D. Ill. 2005) (plaintiffs satisfied particularity requirements of Rule 9(b) in part by specifying what role each defendant had in fraud and timing and location of alleged conduct).

PS also argues that any fraud alleged by Blazquez amounts to unactionable promissory fraud because the claim is based on false promises to take action and not false factual statements. "[P]romissory fraud, i.e., a false statement of intent regarding future conduct rather than present or past facts, is generally not actionable under Illinois law unless the plaintiff also proves that the act was part of a scheme to defraud." *Trade Fin. Partners., LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009). A plaintiff must allege that the defendant did not intend to perform its promise at the time; it is not enough that the defendant later changed its mind or simply did not perform as promised. *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007). A scheme to defraud requires that the fraud be "particularly egregious or, . . . [be] embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *J.H. Desnick v. Am. Broadcasting Cos.*, 4 F.3d 1345, 1354 (7th Cir. 1995). Similarly, a plaintiff seeking to make a ICFA claim relating to a contract must allege that the "defendant planned in advance not to honor the representations it made in the contract or that it would not have been possible or feasible to do so." *Gabler v. Minnesota Mut. Life Ins. Co.*, No. 92 C 8256, 1993 WL 126286, at *2 (N.D. Ill. Apr. 22, 1993); *see Fua Mai Jiang v. Allstate*

*Ins. Co.*, 199 F.R.D. 267, 272 (N.D. Ill. 2001) (applying promissory fraud analysis to ICFA claim). PS states that it made at most implied promises to Blazquez, which are insufficient to support a promissory fraud claim. *See Beraha v. Baxter Health Care Corp.*, 959 F.2d 1436, 1445–46 (7th Cir. 1992) ("Illinois does not recognize a cause of action for fraud based on misrepresentations regarding implied obligations.").

Blazquez's fraud claims, however, are based on express promises made by PS and concealment of material information. Blazquez alleges that PS promised to contact plaintiffs in Spain through e-mail and to give them notice before any sale of their property but that it never did so. Compl. ¶¶ 59(a), (c), 72(a); *see Hill v. PS Ill. Trust*, 368 Ill. App. 3d 310, 319–20, 856 N.E.2d 560, 569 (2006) (plaintiff sufficient alleged unfair practices ICFA claim by alleging that PS failed to give him notice of lien sale and its result and refused to acknowledge it had to disburse proceeds of sale to him). Blazquez adequately alleges that PS never intended to contact him in Spain: he alleges that PS refused to accept any contact information on the rental agreement except plaintiffs' inaccurate U.S. address and phone number. He also alleges that PS made only a single attempt to charge his credit card before selling his property without any notice, suggesting that PS never intended to honor its promises to e-mail plaintiffs and give them notice of any sale. Blazquez's claim does not amount to trying to make a fraud claim out of a simple breach of contract (indeed, he acknowledges that he has no breach of contract claim). Instead, he alleges that PS schemed to defraud him by inducing him to rent a storage unit and place his and Hausen's property in the storage unit by making promises to contact them in Spain and not disclosing important facts such as the $5,000 limitation.

PS also contends that Blazquez could not have reasonably relied on any promises made by PS employees, because the rental agreement contains an integration clause stating that "there are no representations, warranties, or agreements by or between the parties which are not fully set forth herein." Pl. Ex. 1 ¶ 18. Blazquez alleges, however, that he and Hausen were not able to completely read the contract in the time they were given to review it. Compl. ¶¶ 20–21. He also alleges that when they expressed specific concerns about the contract, including that the amount of insurance was too low and that they would not be reachable at the United States address they were required to provide, the PS employee reassured them that their concerns were unnecessary. *Id.* ¶¶ 23, 26–28. Blazquez has sufficiently alleged that he reasonably relied on PS's allegedly false statements. *Id.* ¶ 74.

For these reasons, the declines to dismiss Blazquez's fraud claims.

**D. Conversion claims**

"To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998).

PS contends that plaintiffs did not have a absolute and immediate right to possess the property they had stored in the storage unit because Illinois law gave PS a lien over all the property in the unit to secure its right to rent and other charges. *See* 770 ILCS 95/3; *Andrews v. Mid-America Bank & Trust Co.*, 152 Ill. App. 3d 139,

14

141–42, 503 N.E.2d 1120, 1122 (1987) (defendant did not convert because it had a security interest allowing it to take possession after default; plaintiff had defaulted and thus could not show absolute right to possess). PS could enforce its lien through sale of the property after a claim became due and it provided notice to the plaintiffs. 770 ILCS 95/4(A)–(C); see *Valentino v. Glendale Nissan, Inc.*, 317 Ill. App. 3d 524, 531, 740 N.E.2d 538, 543 (2000) (holder of a security interest did not convert car when statute giving security interest allowed it to take possession). In their complaint, plaintiffs admit that PS tried to charge their credit card on February 2, 2001 and that payment was not authorized. Compl. ¶¶ 32–33. Even though plaintiffs allege that PS unreasonably made no further attempts to charge the credit card, the fact that they failed to pay PS the monthly rent means that they did not have an absolute and immediate right to possess the property in the storage unit. *See First Chicago Gary-Wheaton Bank v. Gaughan*, 275 Ill. App. 3d 53, 63, 655 N.E.2d 936, 944 (1995) (even though holder of security interest had wrongfully repossessed car and car owner was not in default, car owner did not have an absolute and unconditional right to possess because he had failed to make timely payments).

Although plaintiffs have not stated a viable conversion claim for the property in the storage locker, they have sufficiently alleged a claim that PS converted any sale proceeds that exceeded the $572 that PS claims plaintiffs owed. PS argues that it could not have wrongfully assumed control over these proceeds because Illinois law entitled it to sell the property and use the proceeds to satisfy its lien. 770 ILCS 95/4(J). The statute provides, however, that a storage facility "owner may satisfy his lien from the proceeds of the sale, *but shall hold the balance, if any, for delivery on demand to*

*the occupant.*" *Id.* (emphasis added). Hausen and Blazquez allege that they have requested details and records of the sale from PS but that PS has refused to provide any information. Compl. ¶¶ 49–51. Plaintiffs have sufficiently alleged that PS wrongfully assumed control over the excess proceeds, because the statute obligated PS to turn them over on demand.

PS also contends that Blazquez cannot state a claim for conversion because the rental agreement provided that Hausen, the only person who signed the agreement, would "store only personal property that belong[ed] to" her. Pl. Ex. 1 ¶ 6. This argument ignores the possibility that Hausen stored property that she jointly owned with her husband Blazquez, as the complaint alleges. *See* Compl. ¶ 31. In any event, Blazquez alleges that he placed his property in the storage unit and that PS converted the property by improperly selling it. *Id.* PS has not explained how any noncompliance by plaintiffs with this term of the contract affects Blazquez's ability to bring a conversion claim.

For these reasons, the Court dismisses plaintiffs' conversion claim to the extent it relates to the property stored in the storage unit, but not to the extent it relates to the excess proceeds from the sale of the property.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss [docket no. 12] in part and denies it in part. Specifically, the Court dismisses Count 1 as it relates to Blazquez's breach of contract claim and Count 3 as it relates to

conversion of the property in the storage unit, but otherwise denies the motion.

Date: January 29, 2012

        s/ Matthew F. Kennelly
        MATTHEW F. KENNELLY
        United States District Judge